## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

**MICHELLE CAFEGO, Administratrix**
**of the Estate of Scotty Cafego, deceased,**
                         **Plaintiff,**

**v.**                                      **Case No.**   5:25-cv-00520

**WEST VIRGINIA DIVISION OF**
**CORRECTIONS AND REHABILITATION;**
**LT. JAMES FURROW, individually and**
**as an employee of the West Virginia Division**
**of Corrections and Rehabilitation;**
**CO AUSTIN HARVEY, individually and**
**as an employee of the West Virginia Division**
**of Corrections and Rehabilitation;**
**CPL. JAMIE STANLEY, individually and**
**as an employee of the West Virginia Division**
**of Corrections and Rehabilitation;**
**CPL. ZACHARY EAKLE, individually and**
**as an employee of the West Virginia Division**
**of Corrections and Rehabilitation;**
**CPL. CAMERON RICE, individually and**
**as an employee of the West Virginia Division**
**of Corrections and Rehabilitation;**
**JOHN DOE(S) and JANE DOE(S) Correctional**
**Officers, individually and as employees of the**
**West Virginia Division of Corrections and**
**Rehabilitation;**

**JOHN FRAME, Former Superintendent**
**of Southern Regional Jail, individually;**
**WEXFORD HEALTH SOURCES, INC.;**
**WEXFORD JOHN DOE(S) and JANE DOE(S),**
**employees of Wexford Health Sources, Inc.,**
**individually and as employees of Wexford**
**Health Services, Inc.,**
                                 **Defendants.**

1

# COMPLAINT

## I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

   Venue is proper pursuant to 28 U.S.C. § 1391(b), because the events giving rise to these claims occurred in Raleigh County, West Virginia, within the Southern District of West Virginia, Beckley Division.

## II. PARTIES

4. Plaintiff Michelle Cafego is the duly appointed Administratrix of the Estate of Scotty Cafego, deceased, and brings this action in such representative capacity on behalf of the statutory beneficiaries of the wrongful death claim under West Virginia law and on behalf of the decedent for civil rights violations pursuant to 42 U.S.C. § 1983.

5. Defendant West Virginia Division of Corrections and Rehabilitation (hereinafter "WVDCR") is a state agency under the authority and control of the West Virginia Department of Homeland Security. WVDCR operates, manages, and controls all state correctional facilities in West Virginia, including Southern Regional Jail ("SRJ") located in Beaver, Raleigh County, West Virginia.

6. Defendant Lt. James Furrow (hereinafter "Furrow") was at all times relevant hereto employed as a correctional officer by WVDCR and assigned to SRJ. He was acting under

color of state law and within the scope of his employment at all times relevant to the allegations of this Complaint. Furrow is sued individually and in his capacity as an employee of WVDCR.

7. Defendant CO Austin Harvey (hereinafter "Harvey") was at all times relevant hereto employed as a correctional officer by WVDCR and assigned to SRJ. He was acting under color of state law and within the scope of his employment at all times relevant to the allegations of this Complaint. Harvey is sued individually and in his capacity as an employee of WVDCR.

8. Defendant Cpl. Jamie Stanley (hereinafter "Stanley") was at all times relevant hereto employed as a correctional officer by WVDCR and assigned to SRJ. He was acting under color of state law and within the scope of his employment at all times relevant to the allegations of this Complaint. Stanley is sued individually and in his capacity as an employee of WVDCR.

9. Defendant Cpl. Zachary Eakle (hereinafter "Eakle") was at all times relevant hereto employed as a correctional officer by WVDCR and assigned to SRJ. He was acting under color of state law and within the scope of his employment at all times relevant to the allegations of this Complaint. Eakle is sued individually and in his capacity as an employee of WVDCR.

10. Defendant Cpl. Cameron Rice (hereinafter "Rice") was at all times relevant hereto employed as a correctional officer by WVDCR and assigned to SRJ. He was acting under color of state law and within the scope of his employment at all times relevant to the allegations of this Complaint. Rice is sued individually and in his capacity as an employee of WVDCR.

11. Defendants John Doe(s) and Jane Doe(s) Correctional Officers were at all times relevant hereto employed by WVDCR and assigned to SRJ. Their true identities are presently unknown. Upon discovery, they will be substituted by name. Each was acting under color of state law and within the scope of his or her employment at all times relevant to the allegations of this Complaint. They are sued individually and in their capacity as employees of WVDCR.

12. Defendant John Frame (hereinafter "Former Superintendent Frame") was at all times relevant hereto the Superintendent of SRJ. Frame was vested with the authority and responsibility for the administration, operation, and control of SRJ, including oversight of all SRJ employees. Former Superintendent Frame was acting under color of state law at all times relevant to the allegations herein. He is sued for damages in his individual capacity.

13. Defendant Wexford Health Sources, Inc. (hereinafter "Wexford") is a Florida corporation with its principal place of business in Pittsburgh, Pennsylvania. From June 2022 to the present, Wexford has been the contracted healthcare provider for the West Virginia Department of Corrections and Rehabilitation for the provision of medical care at SRJ. Wexford performed medical acts and omissions within the State of West Virginia relating to the provision of medical care at SRJ.

14. Defendants Wexford John Doe(s) and Jane Doe(s) were at all times relevant hereto employees, agents, or contractors of Defendant Wexford, assigned to provide medical services at SRJ. Their true identities are presently unknown. Upon discovery, they will be substituted by name. Each was acting under color of state law in providing medical services in a state correctional facility.

# III. FACTUAL ALLEGATIONS

16. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

17. On August 27, 2025, Scotty Cafego was confined as a pretrial detainee in the booking section of SRJ.

18. Upon information and belief, Defendant CO Austin Harvey opened the door to Mr. Cafego's cell during the delivery of meal trays.

19. Upon information and belief, Harvey and John Doe 1 initiated physical actions against Mr. Cafego by spraying him in the face with a full blast of pepper spray, a known bronchoconstrictor, without justification or necessity.

20. Upon information and belief, additional correctional officers, including Defendants Furrow, Stanley, Eakle, Rice, and other John and Jane Doe Correctional Officers, joined in delivering blows to Mr. Cafego, forcing him to the ground, and placing him in mechanical restraints.

21. Mr. Cafego was left lying face down, handcuffed, restrained, and unconscious after being sprayed with pepper spray and assaulted by correctional officers.

22. Upon information and belief, some or all of the named Defendant correctional officers used excessive force against Mr. Cafego.

23. Upon information and belief, some or all of the named Defendant correctional officers failed to intervene or protect Mr. Cafego from the excessive force inflicted by their colleagues.

24. After Mr. Cafego was restrained, pepper-sprayed, and helpless, he succumbed to positional asphyxiation. He was unable to breathe due to his restraints, prone position, and the lack of observation and supervision by WVDCR employees, including Defendants Furrow, Harvey, Stanley, Eakle, Rice, and Doe Correctional Officers.

25. Upon information and belief, correctional officers and/or medical personnel in booking eventually realized that Mr. Cafego was unresponsive, not breathing, and/or dying due to the force, restraint, and circumstances created by the actions of the correctional officers.

26. Upon information and belief, correctional officers breached their duties of care to protect, observe, and attend to Mr. Cafego in a constitutionally adequate manner.

27. Upon information and belief, medical personnel employed by Wexford, including Wexford John and Jane Doe Defendants, failed to provide adequate emergency medical care, resuscitation, or timely intervention.

28. Upon information and belief, the combined acts and omissions of the Defendant correctional officers and Wexford medical staff allowed positional asphyxiation to persist long enough to kill Mr. Cafego.

29. Former Superintendent Frame knew or should have known of the excessive force used by officers because Defendant Frame was aware of prior incidents at SRJ, involving issues of the same nature.

30. Former Superintendent Frame was aware of SRJ's policies and procedures regarding excessive force and treatment for the health and safety of inmates and failed to enforce these policies.

31. Former Superintendent Frame took no action to address the staff's actions or to change or enforce policies.

32. Mr. Cafego died as a direct and proximate result of the unconstitutional force, reckless restraint, deliberate indifference, and failures of care by the named Defendants and the Doe Defendants.

## IV. CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983 – EXCESSIVE FORCE

(Against Furrow, Harvey, Stanley, Eakle, Rice, and Doe Correctional Officers)

33. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

34. At all times relevant hereto, Defendants Furrow, Harvey, Stanley, Eakle, Rice, and Doe Correctional Officers acted under color of state law as employees of WVDCR.

35. On August 27, 2025, these Defendants used force against Scotty Cafego in violation of Mr. Cafego's Fourth Amendment rights that was objectively unreasonable, excessive, and disproportionate to any need for discipline or control.

36. Defendants' acts included, but were not limited to, discharging pepper spray into Mr. Cafego's face, striking him, forcing him to the ground, and restraining him while handcuffed and incapacitated.

37. Such conduct violated Mr. Cafego's clearly established rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and were not taken in

good faith, were objectively unreasonable, and were in violation of clearly established law.

38. At no point did Defendants have an objectively reasonable belief that they were in danger of imminent bodily harm from Plaintiff to justify their excessive force.

39. Defendants' violent actions were unlawful and unjustified.

40. As a direct and proximate result of Defendants' excessive force, Mr. Cafego sustained pain, suffering, and ultimately death.

41. Plaintiff will seek to recover damages pursuant to 42 U.S.C. § 1983 and 1988, including attorneys' fees and costs incurred during the course of this litigation.

42. The actions of Defendants were reprehensible, willful and wanton, malicious and in blatant disregard for the rights owed to Mr. Cafego, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

### COUNT II – 42 U.S.C. § 1983 – FAILURE TO PROTECT

(Against Furrow, Harvey, Stanley, Eakle, Rice, and Doe Correctional Officers)

43. Plaintiff incorporates by reference all preceding paragraphs.

44. Defendants had a duty to protect Scotty Cafego from harm at the hands of other officers and to intervene when unlawful force was being used.

45. Defendants knew or reasonably should have known that Mr. Cafego was subjected to excessive force and was at substantial risk of serious harm, including asphyxiation.

46. Despite such knowledge, Defendants failed to intervene, failed to protect, and failed to stop the unconstitutional conduct.

47. This deliberate indifference violated Mr. Cafego's rights under the Eighth and Fourteenth Amendments.

48. As a proximate result, Mr. Cafego suffered pain, suffering, and death.

### COUNT III – 42 U.S.C. § 1983 – SUPERVISORY LIABILITY

(Against Former Superintendent John Frame)

49. Plaintiff incorporates by reference all preceding paragraphs.

50. At all times relevant, Defendant Frame was Superintendent of SRJ and acted under color of state law.

51. Defendant Frame was charged with the administration, operation, and control of SRJ, including staff oversight.

52. Defendant Frame failed to adequately train, supervise, and discipline correctional staff, despite knowledge of risks of excessive force, lack of observation, and inadequate medical intervention.

53. Defendant Frame's deliberate indifference was a proximate cause of Mr. Cafego's injuries and death.

### COUNT IV – 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

(Against Wexford and Wexford Doe Employees)

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Defendants Wexford and Wexford Doe Employees acted under color of state law in providing contracted medical services at SRJ.

56.

57. Mr. Cafego was in obvious and immediate need of medical care when he was rendered unconscious, unresponsive, and unable to breathe.

58. Defendants knew or should have known of this serious medical need and yet failed to render appropriate emergency care, resuscitation, or timely medical intervention.

59. This deliberate indifference violated Mr. Cafego's rights under the Eighth and Fourteenth Amendments.

60. As a result, Mr. Cafego died, causing damages recoverable under § 1983.

## COUNT V – 42 U.S.C. § 1983 – BYSTANDER LIABILITY

(Against John Doe(s) and Jane Doe(s) Correctional Officers)

60. Plaintiff incorporates by reference all preceding paragraphs.

61. Defendant Doe Correctional Officers were present and aware that unlawful excessive force was being used against Mr. Cafego.

62. Defendant Doe Correctional Officers were acting under color of law and within the scope of their employment of the WVDCR.

63. Defendant Doe Correctional Officers violated Plaintiff's constitutional rights by failing to intervene when Defendants were unlawfully beating Plaintiff, as described hereinabove, while Plaintiff was incarcerated at SRJ.

64. At all material times, Defendant Doe Correctional Officers were aware that Plaintiff's rights were being violated, yet purposefully failed and/or refused to take reasonable steps to protect Plaintiff from Defendants' excessive use of force.

65. Each Defendant Doe Correctional Officer had a reasonable opportunity to intervene to prevent further harm but failed to do so.

66. Their failure to act constitutes bystander liability/failure to intervene under 42 U.S.C. § 1983.

67. A "bystanding" officer "(1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent the harm, and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002).

68. Defendant Doe Correctional Officers' were present and aware of the excessive force used on Mr. Cafego, had every opportunity to intervene and protect Mr. Cafego from the violence and get him medical attention immediately, yet chose to do nothing.

69. Defendant Doe Correctional Officers' actions were unlawful and unjustified.

70. As a direct and proximate result of Defendant Doe Correctional Officers' unreasonable, unjustified, and unconstitutional conduct, Mr. Cafego suffered injuries and death.

71. Plaintiff will seek to recover damages pursuant to 42 U.S.C. § 1983 and 1988, including attorneys' fees and costs incurred during the course of this litigation.

72. The actions of Defendants were reprehensible, willful and wanton, malicious and in blatant disregard for the rights owed to Mr. Cafego, thereby justifying an award of

punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

### COUNT VI – 42 U.S.C. § 1983 – BYSTANDER LIABILITY

(Against Wexford John Doe(s) and Jane Doe(s))

73. Plaintiff incorporates by reference all preceding paragraphs.
74. Defendant Wexford Doe employees were present and aware that Mr. Cafego was unresponsive and dying due to force and restraint.
75. Each had a reasonable opportunity to provide or demand urgent medical care but failed to act.
76. At all material times, Wexford Doe employees were aware that Plaintiff's rights were being violated, yet purposefully failed and/or refused to take reasonable steps to protect Plaintiff from Defendants' excessive use of force.
77. Wexford Doe employees further failed to render immediate medical attention to Mr. Cafego.
78. Each Wexford Doe Defendant had a reasonable opportunity to intervene to prevent further harm, and even provide medical care to Mr. Cafego timely and immediately, but failed to do so.
79. Their failure to act constitutes bystander liability/failure to intervene under 42 U.S.C. § 1983.

80. A "bystanding" officer "(1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent the harm, and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002).

81. Wexford Doe Defendants were present and aware of the excessive force used on Mr. Cafego, had every opportunity to intervene and protect Mr. Cafego from the violence and get him medical attention immediately, yet chose to do nothing.

82. Wexford Doe Defendants' actions were unlawful and unjustified.

83. As a direct and proximate result of Wexford Doe Defendants' unreasonable, unjustified, and unconstitutional conduct, Mr. Cafego suffered injuries and death.

84. Plaintiff will seek to recover damages pursuant to 42 U.S.C. § 1983 and 1988, including attorneys' fees and costs incurred during the course of this litigation.

85. The actions of Defendants were reprehensible, willful and wanton, malicious and in blatant disregard for the rights owed to Mr. Cafego, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT VII – WRONGFUL DEATH

(Against All Defendants)

86. Plaintiff incorporates by reference all preceding paragraphs.

87. Pursuant to W. Va. Code § 55-7-5 et seq., Defendants' negligent, reckless, and deliberate acts directly and proximately caused the wrongful death of Scotty Cafego.

88. The West Virginia Medical Professional Liability Act ("MLPA"), W. Va. Code §§ 55-7B-1 to -12, governs all "medical professional liability" actions "resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." § 55-7B-2(i) (emphasis added). This includes "other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services." *Id.*; see also *State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 193, 866 S.E.2d 350, 359 (2021).

89. Wexford employees failed to properly evaluate, diagnose, treat, and medically manage Mr. Cafego's condition, ignored Mr. Cafego's obvious need for immediate medical attention only after failing to intervene as Mr. Cafego's rights were violated by other Defendants, and failed to recognize a life-threatening medical emergency and act appropriately and expeditiously.

90. Defendant Wexford and its employees were medically negligent with respect to the MPLA, breached the standards of care, and caused Mr. Cafego's untimely death.

91. Plaintiff, on behalf of the statutory beneficiaries, seeks damages for sorrow, mental anguish, solace, loss of society, companionship, comfort, guidance, kindly offices, services, protection, care, and assistance.

## COUNT VIII – NEGLIGENCE / MEDICAL NEGLIGENCE

(Against Wexford and Wexford Doe Employees)

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Defendants owed a duty pursuant to the West Virginia Medical Professional Liability Act to provide of reasonable medical care, meeting the standard of care, to inmates, including Mr. Cafego, exercising that degree of skill, knowledge and care that a reasonable healthcare provider would under the same or similar circumstances and to restrain their practice to include only those acts and care for which each is certified, not exceeding their scope of practice.

94. Wexford, through its agents and employees, owed Mr. Cafego a duty of care under West Virginia's Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1, *et seq*. as the applicable health care provider for Plaintiff.

95. Wexford contracted with the State of West Virginia to provide inmates like Mr. Cafego with constitutionally adequate healthcare which meets the applicable standard of care.

96. Wexford owed Mr. Cafego a duty of care as the contracted medical provider.

97. Wexford and its employees and agents herein deviated from the standard of care as set more fully herein, resulting in deliberate indifference to the serious medical needs of Mr. Cafego.

98. Wexford and its employees and agents deviated from the standard of care by failing to enforce NCCHC standards, its own policies and procedures, WVDCR policies, which resulted in Mr. Cafego's death.

99. Wexford, through its agents and employees acting within the scope of their employment, were negligent, careless, and reckless, and deviated from the standard of care in connection with its treatment of Mr. Cafego by the actions and inactions described hereinabove, including but not limited to:Defendants' failure to provide adequate emergency care; failure to provide resuscitation, or intervention utilizing the degree of skill, knowledge and care which a reasonable healthcare provider would be expected to provide under the same or similar circumstances; failure to properly evaluate, treat, and medically manage Mr. Cafego's condition; failure to promptly treat Mr. Cafego or send him to an outside facility for immediate medical attention; failure to follow Wexford's policies and procedures; and failure to call EMS timely.

100. Defendant Wexford failed to provide the number or and properly skilled and credentialed healthcare providers at Southern Regional Jail resulting in negligent medical care, delayed medical care and breaches in the standard of care, which negligence, in conjunction with the negligence of the individual Wexford defendants directly and proximately caused and/or contributed to Mr. Cafego's death.

## COUNT IX – NEGLIGENCE / RECKLESS INDIFFERENCE

(Against WVDCR and Correctional Officer Defendants)

101. Plaintiff incorporates by reference all preceding paragraphs.

102. Defendants owed duties of care to protect, monitor, and safeguard Mr. Cafego while in custody.

103. At all times relevant hereto, Defendants owed Mr. Cafego a duty of care while he was incarcerated at SRJ.

104. As set forth hereinabove, Defendants, while acting within the scope of their employment, breached their duties of care to Mr. Cafego.

105. Defendants breached those duties through the following, including but not limited to, unlawful and unjustified excessive force, unsafe restraint, failure to observe, and failure to render aid.

106. Defendants' negligence and recklessness directly and proximately caused or contributed to Mr. Cafego's death.

107. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michelle Cafego, Administratrix of the Estate of Scotty Cafego, by counsel, respectfully prays that this Court enter judgment in her favor and against the Defendants, and requests the following relief:

A. Compensatory damages in an amount to be determined by a jury, for the injuries, suffering, and death of Scotty Cafego, including damages recoverable under the West Virginia Wrongful Death Act, W. Va. Code § 55-7-6, for the benefit of the statutory beneficiaries.

B. Punitive damages against all individual Defendants, in their individual capacities, to the extent permitted by law, in an amount sufficient to punish and deter future similar conduct.

C. As to claims arising under state law against state entities and state employees sued in their official capacities, damages shall be limited in accordance with any applicable state law caps or limitations on damages against such defendants.

D. Injunctive and declaratory relief as may be necessary to remedy the unconstitutional policies, practices, and customs of the West Virginia Division of Corrections and Rehabilitation and Wexford Health Sources, Inc.

E. Reasonable attorney's fees and costs of litigation pursuant to 42 U.S.C. §§ 1983 and 1988, and any other applicable law.

F. Pre-judgment and post-judgment interest as allowed by law.

G. Such other, further, and different relief as the Court may deem just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

                                                                                    PLAINTIFF,
                                                                                    **By Counsel**

                                                                                      *s/*Stephen P. New
                                                                                      Stephen P. New (WVSB No. 7756)
                                                                                      Emilee B. Wooldridge (WVSB No. 14310)
                                                                                      Stephen New & Associates

430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newlawoffice.com
emilee@newlawoffice.com

Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com